# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

QUAMAIN CONAY LEAK,

        Defendant-Appellant.

UNPUBLISHED
November 8, 2016

No. 327336
Oakland Circuit Court
LC No. 2010-233891-FC

Before: SAAD, P.J., and JANSEN and M. J. KELLY, JJ.

JANSEN, J. (*concurring in part and dissenting in part*).

I agree with the majority's conclusion that this Court previously established that a judge, rather than a jury, makes the determination whether to sentence a juvenile offender to life imprisonment without the possibility of parole. However, I respectfully dissent with regard to the majority's conclusion that defendant's sentence was proportional because I believe the trial court abused its discretion when it resentenced defendant to life without parole. Accordingly, I would remand the case for resentencing by a different trial judge.

As stated in the majority opinion, we review the trial court's ultimate determination regarding the life-without-parole sentence imposed on a juvenile offender for an abuse of discretion. *People v Hyatt*, ___ Mich App ___; ___ NW2d ___ (2016) (Docket No. 325741); slip op at 25. However, this Court has also explained that "the imposition of a juvenile life-without-parole sentence requires a heightened degree of scrutiny regarding whether a life-without-parole sentence is proportionate to a particular juvenile offender, and even under this deferential standard, an appellate court should view such a sentence as inherently suspect." *Id*. at ___; slip op at 26. Further, this Court clarified in *Hyatt* that a proportionate life-without-parole sentence will be rare, and that in order to impose a life-without-parole sentence on a juvenile offender, the juvenile must be "the truly rare individual who is incapable of reform." *Id*. at ___; slip op at 28.

The trial court abused its discretion when it refused to consider the psychological report of Jeffrey Wendt, Ph.D. The trial court authorized the psychological report in connection with defendant's resentencing. Dr. Wendt's report outlined defendant's well-established cognitive issues and detailed the fact that defendant's intellectual functioning is lower than 95% of his same-aged peers. His full-scale IQ score is 76, which falls within the range of borderline intellectual functioning. After a detailed discussion of defendant's academic history and

cognitive limitations, Dr. Wendt concluded that defendant's "intellectual immaturity would have interfered with his ability to thoughtfully consider the long-term consequences of his behavior." He also opined that defendant's extremely low intellectual level would have made him more vulnerable to the volatile and unstable influences in his environment. He explained that defendant's cognitive abilities were significantly lower than the cognitive abilities of the average 17-year-old offender. In fact, objective testing performed when defendant was 15 years old indicated that defendant was performing at the level of an 8-year-old child.

The trial judge abused his discretion by concluding that he lacked confidence in the accuracy of this thorough, credible, and balanced report. The trial judge improperly disregarded the findings of the professional psychologist and supplanted his own opinions regarding defendant's cognitive abilities. The trial court's opinion was based solely on a letter defendant wrote to the court and defendant's countenance during the resentencing. However, the court failed to consider the fact that it is not unusual for prisoners to receive help with correspondence. For the trial court to conclude, without basis, that defendant's intellectual functioning was at a higher level than what the objective standard testing showed was an absolute abuse of discretion.

The majority reasons that the trial court was under no obligation to accept Dr. Wendt's opinion, but ignores the fact that Dr. Wendt's evaluation of defendant was conducted in order to aid the trial court in sentencing defendant. Instead of considering the weight of the report, the trial judge improperly came to his own conclusions regarding defendant's intellectual capabilities. The majority also points out that defense counsel acknowledged that Dr. Wendt's report was inconsistent with defendant receiving good grades in school. However, the psychological report indicates that defendant's academic performance was inconsistent except when he attended a special school for at-risk individuals, which *supports* Dr. Wendt's conclusions regarding defendant's cognitive functioning.

The majority also points out that defendant accrued 26 prison violations. However, defendant explained during his psychological evaluation that the majority of the misconduct tickets were for improper use of the telephone. Defendant further reported that he received two tickets after being attacked by other inmates. With regard to the misconduct tickets pertaining to weapons, defendant explained that he received two tickets when weapons were found in a prison cell that he shared with another inmate, and he received another ticket when he merely picked up a piece of fence material that he found on the prison grounds. Thus, contrary to the majority's conclusion, defendant's prison violations do not indicate that he is the truly rare individual incapable of reform. Further, because of defendant's life-without-parole sentence, he is prohibited from participating in any rehabilitative programs, which compounds the issue by preventing defendant from having any opportunity for rehabilitation.

I also conclude that the trial court abused its discretion in determining that defendant was the truly rare juvenile for whom life imprisonment without parole is constitutionally proportionate. Although defendant was involved in planning and executing the armed robbery, defendant was not the shooter, and he did not direct the shooter to shoot the victim. Instead, the facts of the case indicate that the shooting was a spur of the moment decision during an armed robbery gone wrong. The fact that defendant was not the shooter constitutes a mitigating factor weighing against the finding that defendant was the truly rare individual incapable of reform. Therefore, I conclude, under the heightened degree of scrutiny employed in determining whether

a juvenile life-without-parole sentence is proportionate, that the trial court abused its discretion in imposing the rare sentence of life without parole on this juvenile offender.

Finally, I would remand this case for resentencing by a different trial judge. This Court employs the following test in determining whether a defendant should be resentenced by a new trial judge:

> (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness. [*People v Hill*, 221 Mich App 391, 398; 561 NW2d 862 (1997) (citation and quotation marks omitted).]

In this case, it is clear that the trial judge would reasonably be expected to have substantial difficulty putting out of his mind his previously-expressed views and findings. The trial judge sentenced defendant on three occasions, and during the most recent resentencing he largely referred back to his previous findings. Therefore, the judge has made clear that he believes that a life-without-parole sentence is appropriate, and he would have substantial difficulty putting out of his mind his previously-expressed views and findings upon resentencing. In addition, reassignment is advisable to preserve the appearance of justice in this case in light of the trial judge's continued sentence of life without parole. The trial judge has made clear on three occasions that he believes defendant should be sentenced to life without parole, and the appearance of justice would not be preserved by having the same judge sentence defendant to a term of years. Additionally, reassignment would not entail waste and duplication disproportionate to the gain in preserving the appearance of fairness in light of the trial judge's decision to sentence defendant to life imprisonment without parole on three separate occasions. Therefore, I would remand the case for resentencing by a different trial judge.

/s/ Kathleen Jansen